## KENGLA *v.* RANDALL.

EXECUTORS; WILL CONTESTS; COUNSEL FEES.

1. Pending the trial of issues on a *caveat* to a will charging that its execution was procured by the exercise of undue influence and fraud on the testator by the executor named therein, the probate court has no power, on the application of the executor, to allow fees to be paid from the estate to counsel employed by him to defend the will; distinguishing *Tuohy* v. *Hanlon,* 18 App. D. C. 225.

2. After the trial of issues on a *caveat* to a will, if it appear that the executor has acted in good faith throughout, he may, in the discretion of the court, have an allowance out of the estate for costs and counsel fees, whether the validity of the will be sustained or not.

No. 1327.     Submitted October 6, 1903.     Decided October 21, 1903.

HEARING on an appeal (specially allowed) by the caveators from an order of the Supreme Court of the District of Columbia, sitting as a court of probate authorizing an executor to employ counsel, and directing payment to them of a retaining fee out of the estate.                    *Reversed.*

The COURT in the opinion stated the case as follows:

This cause comes before us on a special appeal allowed by this court from an order of the probate branch of the supreme court of the District of Columbia.

On January 13, 1903, one Louis Kengla, long a resident of the District of Columbia, died herein, possessed of an estate, real and personal, of the value of about $150,000, and leaving a paper writing conceded to have been executed in due form of law, which purported to be his last will and testament, and whereby he disposed of his estate to various persons named therein. As executors of the will he nominated the appellee, Ephraim S. Randall and another person, who died before the testator. The surviving executor Randall propounded the will for probate in the supreme court of the District.

The testator, it seems, had never married, and left no father, mother, brother, or sister surviving him. His heirs at law and next of kin were the children and descendants of a deceased brother, some of whom were named in the will as devisees and legatees with other persons apparently not of kin to the testator, and some were omitted from it. Four of these joined in a *caveat* against the probate of the will. In this *caveat,* after admission of the formal execution of the will, they charged that the testator was not of sound and disposing mind at the time of such execution, and that the execution of it was procured from

him by undue influence and fraud exercised upon him by the appellee Randall, the executor named in the will, and by other persons.

Whether issues were thereupon framed does not appear from the record; but it does appear that collectors were thereupon appointed to take charge of the estate pending the determination of the controversy between the parties. The appellee then petitioned the court for authority to employ counsel to defend the will, and for an order upon the collectors to pay to such counsel a reasonable retainer and counsel fee, and such other and further expenses as might be proper and necessary in collecting the evidence and defraying costs of the trial. The caveators, the appellants here, answered the petition and protested against any such allowance; but the court, over their protest, passed an order, whereby the executor was authorized and empowered to employ counsel to represent him in the proceeding, and whereby also the collectors were authorized and directed to pay to such counsel a retaining fee of $1,000, being $500 to each of two gentlemen named.

From this order the caveators sought and were allowed a special appeal to this court.

*Mr. C. C. Cole, Mr. R. Golden Donaldson, Messrs. Gordon & Gordon,* and *Messrs. Hamilton & Colbert,* for the appellants:

1. The theory upon which courts allow the expenses of litigation to be paid out of the assets is that litigation has been for the benefit, or intended benefit, in good faith, of those entitled to the estate. Before the trial, and before the court is in possession of any of the facts and circumstances in relation to the execution of the will, it has no basis upon which to form an opinion, and no facts to inform or control its discretion as to whether the allowance should be made or not. To make an allowance before the trial is the exercise of an arbitrary power, and not the exercise of judgment or discretion. It is claimed that the decision of this court in *Tuohy v. Hanlon,* 18 App. D. C. 225, authorized the making of the order in this case, but it will be ob-

served, upon examination of that case, that it does not support, but rather has a tendency to refute, that contention. In that case Hanlon was mentioned as executor in the paper alleged to be the will of Tuohy. A *caveat* was filed by the sons alleging incapacity and undue influence on the part of Hanlon and others. *No allowance was made to Hanlon for counsel fees prior to the trial.* At the trial the jury found both incapacity and undue influence. The court below subsequently allowed Hanlon the expenses paid by him in the litigation, including counsel fees, but the trial justice certified in the record making the allowance that there was an utter lack of evidence to support the charge of undue influence, and that the verdict upon incapacity was somewhat against the weight of the evidence, but declined to set the verdict aside inasmuch as the state of the evidence did not indicate that at another trial the result would be different upon the issue of capacity and this court affirmed the lower court's order.

2. Until a will has been admitted to probate, or probate thereof denied, the court has no power to aid either the proponent or contestant by awarding an allowance out of the estate, unless so authorized by statute. 16 Enc. Pl. & Pr. 1049, 1050; *Henry* v. *Superior Ct.* 93 Cal. 569; *Matter of Olmstead,* 120 Cal. 447; *Matter of Parish,* 29 Barb. (N. Y.) 627; *Matter of Aaron,* 5 Dem. (N. Y.) 362; *Cruse* v. *Fricke,* 2 Dem. (N. Y.) 264; *Mumpers' Appeal,* 3 Watts & S. 441; *Sheets' Appeal,* 100 Pa. St. 143; *In Re McKumly,* 112 Cal. 447; *Rogers' Appeal,* 13 Pa. St. 569; *Andrews* v. *Andrews,* 7 Ohio St. (N. S.) 143; *Compton* v. *Barnes,* 4 Gill, 55; *Dorsey* v. *Dorsey,* 10 Md. 471; *Brown* v. *Johns,* 62 Md. 333.

*Mr. A. S. Worthington* and *Mr. Joseph D. Wright,* for the appellee:

1. The court below has authority to authorize an executor to employ counsel, and to allow a retaining fee to said counsel employed by him in defending the will, after the filing of the petition for probate, and the *caveat* thereto, before the admission of

the will to probate and the granting of letters testamentary. *Tuohy* v. *Hanlon,* 18 App. D. C. 225; *In Re Pritchard,* 30 W. L. R. 9.    It has been the law of the State of Maryland, from which the probate law of this District is derived, to make allowances for counsel of the executor in such cases.    *Compton* v. *Barnes,* 4 Gill, 55; *Glass* v. *Ramsey,* 9 Gill, 456.    See also *Munden* v. *Bailey,* 70 Ala. 63; *Lassiter* v. *Travis,* 98 Tenn. 330; *Phillips* v. *Phillips,* 81 Ky. 328; *Day* v. *Day,* 3 N. J. Eq. 549; *Chisholm* v. *Barnard,* 10 Grant's Ch. (U. C.) 479.

2.  Subchapter 7 of chapter 5 of the Code, in regard to the accounts of executors and administrators, in § 365, under head of *Disbursements and allowances,* provides that in the accounts of executors and administrators "shall be stated the disbursements by him made, namely:    *    *    *    Fifth. His allowance for costs, attorneys' fees, and extraordinary expenses which the court may think proper to allow."    This section seems to leave the question to the discretion of the court, and there is nothing in the chapter referred to which limits the exercise of this discretion to the final accounting.    When the *caveat* was filed it became the duty of the executor to defend the will; otherwise he would be unworthy the trust reposed in him by his testator.    See cases above cited.    Attention is called to the fact that the amount of the allowance to counsel is admitted to be reasonable, and that question is not, therefore, before the court for consideration.

Mr. Justice MORRIS delivered the opinion of the Court:

It seems to us that the order appealed from is without warrant in law and beyond the jurisdiction of the court to make. Either the estate in controversy belongs to the heirs at law and next of kin of the deceased, or it belongs to the beneficiaries named in the will and represented by the executor.    If it belongs to the heirs at law and next of kin, as it certainly does, if the will is shown to be invalid, it would be a perversion of justice to take their money and use it in an attempt to defeat their

just right; and such, of course, would be the result of the order
in question.    On the contrary, if the estate belongs to the bene-
ficiaries under the will, it is for them, and not for their oppo-
nents, to defray, at least in the first instance, the cost and ex-
pense necessary for the establishment of their right.    Now the
substantial matter in issue is this question of the ownership of
the estate; and it would be a most extraordinary doctrine that
one set of contestants should not only bear the ordinary costs of
court, whether they succeeded or failed in the litigation, but
even should be required to place weapons in the hands of their
opponents wherewith to contest their claims.

We have held, and it has been held in Maryland, from which
we have derived our testamentary law, and it has been decided
elsewhere, that an executor who has successfully defended a
will against attack upon it may, in the discretion of the court,
be allowed for counsel fees and costs expended by him in such
defense.    We have also held in the case of *Tuohy* v. *Hanlon,*
18 App. D. C. 225, as it has likewise been held in Maryland,
"that an executor, seeking unsuccessfully to maintain the valid-
ity of the will which he has propounded, after the issue of let-
ters testamentary to him, is entitled to be allowed for counsel
fees in his account, notwithstanding that in the contest the will
has been overthrown and held for naught, if he has acted in good
faith."    We have even gone farther, and in that case have held
that even before a will has been admitted to probate, and when a
*caveat* has been filed against such probate, and upon the issues
then raised, the caveators have been successful and have over-
thrown the will, the executor therein named might be allowed
his costs and counsel fees in defending the will, if it appears that
he has acted in good faith; but that is the utmost limit to which
the right of such allowance can be carried.    The case affords no
precedent for the order which was rendered in the present case.

In the case of *Tuohy* v. *Hanlon* there were, as in the case now
before us, two issues,—one of testamentary capacity and the
other of undue influence; and the executor was not the person
supposed or assumed to be charged with the exercise of such un-
due influence.    No testimony whatever was adduced on the trial

to sustain the charge of undue influence by anyone; but the issue as to testamentary capacity was found by the jury in favor of the caveators, although the presiding justice had grave doubts whether there was sufficient testimony to support the verdict. Upon this condition of things, after the trial had fully developed the fact that the executor had acted throughout in good faith, he petitioned for the allowance of his counsel fees, notwithstanding that the will had been overthrown, and his petition was granted. This ruling we sustained upon appeal taken to this court.

Clearly this case is very different from that now before us. In the case of *Tuohy* v. *Hanlon,* there was no charge of undue influence against the executor; here the charge of undue influence in the procurement of the will is specifically and principally made against the executor. In the case of *Tuohy* v. *Hanlon* the allowance was not made or sought to be made until after the good faith of the executor had been judicially established after full and complete investigation; here it is sought to assume such good faith in advance and to predetermine that issue in favor of the executor without investigation or trial of any kind. If, upon the trial of the issues formulated or to be formulated in the case, the issue of undue influence should be found against the executor, there will then be positive proof against him that he has acted in bad faith; and yet, under the order here complained of, he will have been allowed the reimbursement which should only be allowed to those acting in good faith; or rather, to his original bad faith and wrongful conduct in the fraudulent procurement of the will, he will have added, with the sanction of the court, the spoliation of the estate belonging to the caveators and its appropriation to his own use for the maintenance of his own fraud. A doctrine that would lead to such a conclusion as this cannot be right.

The element of good or bad faith in the present case is involved in the issue of undue influence in the procurement of the will. That issue remains to be tried. The question of the executors' good faith cannot be determined until such trial has been had. Manifestly it would not only be improper for the court to pre-

judge that question, but it is without jurisdiction to do so at the present stage of the case. Being without jurisdiction to determine that question at this time, the court has no authority tò make an allowance based upon its ultimate determination in favor of the appellee.

We are not insensible to the difficulties and hardships which may sometimes result from the fact that an executor of a will or the beneficiaries under it may not have the means wherewith to defend it successfully, when, perhaps, it is a good and valid will that should be sustained; but such difficulties may occur on either side, and they cannot suffice to justify the taking of one person's money and appropriating it to the use of another by arbitrary judicial action. Neither are we insensible to the fact that the testamentary dispositions of deceased persons are too often recklessly attacked by disappointed or unprincipled relatives and overthrown by the verdicts of juries who are too prone to nullify wills which do not suit their own special views of what testators should do; but neither is this difficulty to be obviated by the arbitrary judicial transfer of a portion of the decedent's estate to the executor and beneficiaries under the will.

If upon the trial of the issues in this case the executor sustains the validity of the will, or if upon such trial he shows that he has acted in good faith throughout, although the will may be overthrown for the want of testamentary capacity in the deceased, he may, in the discretion of the court, have an allowance out of the estate for costs and counsel fees; but if the will is not sustained, and the issue of undue influence is decided against him, and it is thereby shown that he has not acted in good faith, he should not be entitled to such allowance now or at any other time.

We are of opinion that the order appealed from should be reversed with costs, and that the cause be remanded to the Supreme Court of the District of Columbia for further proceedings therein according to law. And it is so ordered. *Reversed.*